### In the Matter of the Estate of SARA M. FRANK, Deceased.

Surrogate's Court, New York County, December 11, 1937.

*Emanuel S. Breslow,* for Wilma Ackerman and Paul Ackerman.

*Schreiber, Buchter & Rathheim,* for the contestant, Bertha Brodley.

*Emanuel H. Reiker*, for the proponent, Edgar A. Samuel.

*Abraham I. Menin*, for the contestant, Otto Monheimer.

FOLEY, S.  In this contested probate proceeding the contestant applies for an examination before trial as adverse parties of Wilma Ackerman and Paul Ackerman upon the issues of undue influence and fraud.  The proponent of the will does not question the right of the contestant to an examination of these adverse parties, but objects to the range of the examination as sought by the contestant. Objection is made to the propriety and power of directing an examination in respect of transactions with the decedent subsequent to the time of the execution of the will.

The objections to probate include a charge that the persons sought to be examined with other named persons procured the execution of the propounded paper by the exercise of undue influence and fraud upon the decedent and conspired to unduly influence the decedent in the making of the propounded paper and procuring the decedent's signature to the instrument by fraud.

Upon applications for examination before trial it has been the practice of the surrogates of New York county to permit an examination by the contestant upon the issues of undue influence and fraud under the general rule that the contestant has the burden of proof upon those questions.  It has been the custom also to deny applications by a contestant for examinations upon the issues of execution of the will and upon testamentary capacity since the burden of proof upon the latter issues is upon the proponent.

As in the present application, misunderstanding on the part of attorneys has frequently arisen as to the effect of the decision of the Appellate Division, First Department, in *Matter of Levy* (198 App. Div. 773).  In that case, Mr. Justice DOWLING, writing for the court, modified the order for examination made by the surrogate by striking out a paragraph which called for the examination of the adverse parties as to occurrences subsequent to the date of the alleged will and codicil.  That decision was rendered in the year 1921, and since that time and up to the date of the rendition of the decision of the Court of Appeals in *Matter of Putnam* (257 N. Y. 140) in the year 1931 the scope of the examination in the Surrogate's Court of New York county was limited to transactions prior to the date of the execution of the contested paper.

In *Matter of Putnam* (*supra*) Judge CRANE, now chief judge of the Court of Appeals, clarified the doubt which had arisen by reason of certain statements of the court in its prior decision in *Smith* v. *Keller* (205 N. Y. 39) and stated the rules applicable to the range of evidence which may be submitted on the actual trial of a probate

contest involving the question of undue influence. In his decision he held that the statements of a decedent "both before and after the making of the will, would be competent to show the state of her mind, her mental capacity, and her attitude and feeling toward her lawyer, and her ability to resist his influence." In that case the attorney had been charged with the exercise of undue influence. He quoted from *Marx* v. *McGlynn* (88 N. Y. 357) that the written and oral declarations of the decedent, "whether made before or after the execution of a will, are competent as bearing upon the testator's mental capacity. They are also competent as bearing upon the condition of the testator's mind, with reference to the objects of his bounty. They may be given in evidence for the purpose of showing his relations to the people around him, and to the persons named in his will as beneficiaries. They are, however, entitled to no weight in proving external acts, either of fraud or undue influence." As Judge CRANE pointed out, there are limitations upon the nature of proof of declarations made by a testator or evidence of his acts and conduct both before and after the will. Such declarations are received only for the limited purpose of showing the strength or weakness of the testator's mind. They may not be extended to show affirmative or external proof of undue influence. Moreover, under the rule stated in *Smith* v. *Keller* (205 N. Y. 39), they should not be too remote in time from the date of the execution of the will. They must be limited to a reasonable period after the making of the instrument.

Summarizing the rules laid down by Judge CRANE, it may be stated that (1) the declarations of a testator commonly received in the trials of contested wills are expressions showing his mental condition and feelings as bearing upon the probability that the document was the production of a sound mind unaffected by undue influence or a mind subject to undue influence; (2) the testator's utterances, acts and expressions, whether prior or subsequent to the making of the will, may be received in evidence; (3) such evidence is competent to show the state of mind of the testator and to show the affection for or dislike of specific persons and his general testamentary attitude towards them.

Since the declarations, acts and conduct of the testator subsequent to the making of the will, within the limitations stated, are material and necessary upon the trial, they become proper subjects of inquiry upon the examination before trial. (Civ. Prac. Act, § 288.) The decision of the Appellate Division in *Matter of Levy* (*supra*) has, therefore, been modified by the rules stated in *Matter of Putnam* (*supra*).

The application of the contestants here for examination into the transactions and conversations between the persons charged with undue influence and the decedent, both prior and subsequent to the date of the execution of the will, is granted as proper subjects of inquiry. Such disposition is made as a matter of law and in the exercise of the discretion of the surrogate.

In the ordinary case it should not be necessary for a contestant to enumerate in detail the matters sought to be inquired into. A simple demand in the notice or application for the examination upon the issues of undue influence and fraud should be sufficient. The order for examination submitted for the signature of the surrogate should be similarly simple and general in form. The demand and order should fix the period of years before and after the date of the will sought to be covered by the examination. In case of dispute upon this point the surrogate determines what is a reasonable period. Special circumstances will necessarily control, although in the average case the period before the will is usually fixed at three years and the period after the date of the will at a maximum of two years, unless the death of the decedent has occurred within that time. In general it may be stated that experience has shown that few differences arise between counsel during the course of the examination. One of the surrogates is always available to rule upon objections as to the extent of the inquiry and to guide the attorneys for the respective parties in the conduct of the examination.

Order as modified signed.