In the Matter of the Probate of the Will of JOHN S. W. CARLL, Deceased.

Surrogate's Court, Suffolk County, June 29, 1951.

*Jane M. Sullivan* for proponent.

*George Dyson Friou* for contestants.

HAZLETON, S. The testator left him surviving as his distributees his widow and son. Under the paper writing which has been offered for probate, he bequeathed the greater portion of his estate to his sister and designated her as the executrix. The widow and son have appeared in the proceeding by the same attorney, and the son has filed objections. An examination of the sole surviving subscribing witness was held pursuant to section 141 of the Surrogate's Court Act and the said examination has been concluded.

A motion has been made in behalf of the widow and son for the examination before trial of the proponent-executrix as an adverse party, for the examination of Edith M. Flynn, Harriet Myers (also known as Harriet Wolf) and Jane H. Sullivan as witnesses, pursuant to section 141 of the Surrogate's Court Act and section 288 of the Civil Practice Act, and for an extension of time to permit the widow to file objections. The motion is opposed by the proponent on several grounds, the first being

that the widow cannot file objections since, if she exercises her right of election under section 18 of the Decedent Estate Law, she will obtain the same financial benefit which will accrue to her in the event that the propounded will is denied probate and the testator is found to have died intestate. As authority for this contention the proponent cites *Matter of O'Keefe* (135 Misc. 394); *Matter of Vance* (263 App. Div. 840), and *Matter of Andrews* (194 Misc. 217). These cases do not appear to be applicable.

In the *O'Keefe* case the moving party was not a distributee, but merely a legatee under the propounded will and, as such, had no right to contest, since she would not benefit by its denial to probate. In the *Vance* case the court held that the decedent's brothers had no practical interest in his estate, which amounted to less than $5,000, and that his widow, the sole beneficiary under his will would in the event of intestacy, be entitled to inherit his entire estate. In the *Andrews* case the surviving spouse had abandoned the decedent and had executed an agreement waiving his interest in her estate and, for that reason, his notice of appearance was vacated and his objections to the will were dismissed.

Since the persons entitled to contest a will are only those who would profit by its rejection (*Matter of Herle,* 157 Misc. 352) it is necessary to determine whether the widow will benefit by the denial to probate of the propounded will. According to the proponent's petition the gross estate is valued at approximately $190,000, while the affidavit of the widow states that the value of the estate exceeds $250,000 and that the value of her bequests under the will is approximately $31,500. Clearly, under subdivision 1 of section 83 of the Decedent Estate Law, after the deduction of debts and administration expenses, the widow in case of intestacy, regardless of whether the gross estate amounts to $190,000 or $250,000, will receive more than that bequeathed to her under the will and, therefore, she will benefit by its rejection.

Section 147 of the Surrogate's Court Act provides that: '' Any person interested * * * as heir at law, next of kin, or otherwise, in any property, any portion of which is disposed of or affected, or any portion of which is attempted to be disposed of or affected, by a will or codicil offered for probate; * * * may file objections to any will or codicil so offered for probate. Such objections must be filed at or before the close of the testimony taken before the surrogate on behalf of the proponent, or at such subsequent time

as the surrogate may direct ''. Giving the words of the statute their ordinary meaning there can be no doubt of the widow's right to oppose probate. The general rule is " ' *that every one may ask to be heard before a decree is made which may affect his rights, even if it does not finally determine them.'* " (*Matter of Rose,* 185 Misc. 33, 37-38.)

The basic necessity for admitting as litigants in a probate proceeding all persons who have an interest to protect, was made clear in *Matter of Davis* (182 N. Y. 468); *Matter of Rose, (supra)* ; *Matter of Aspenleiter* (187 Misc. 167), and *Matter of Zimmerman* (104 Misc. 516). In the latter case the court at pages 541–542 stated " it is apparent that liberality as to parties to contested probates is an inherited tradition of great antiquity in courts of this character. * * * In *Matter of Greeley,* 15 Abb. Pr. (N. S.) 393, in the year 1873, Surrogate Coffin held that any interest, however slight, or even the bare possibility of an interest, was sufficient to entitle a party to appear in opposition to the probate of a testamentary paper. * * * In *Gombault* v. *Public Administrator,* 4 Bradf. 226, evidently on the ground of interest alone, Surrogate Bradford recognized the right of the public administrator and even of the attorney-general to appear, thus demonstrating that, in his opinion, in the abstract, others, besides next of kin or heirs-at-law, might have an interest."

" ' It is not the policy of the laws to deprive parties of their proprietary rights and interests without affording them an opportunity to be first heard ' ''. (*Matter of Rose, supra,* p. 38.) The right to file objections to the probate of a will is a property right that survives the death of the person having such right (*Matter of Burridge,* 234 App. Div. 457, revd. on other grounds 261 N. Y. 225; *Matter of Mackenzie,* 156 Misc. 616). The right to file a notice of election under section 18 of the Decedent Estate Law is a personal right and must be exercised by the surviving spouse during the spouse's lifetime, and within the time prescribed by statute. It does not survive the death of the person having such right (*Matter of Brill,* 175 Misc. 236; *Matter of Coffin,* 152 Misc. 619; *Matter of Gross,* 177 Misc. 716). These rights are not exclusive or contradictory of one another, and a surviving spouse does not have to elect between them, for she can exercise both.

The right of election is not a self-executing one. " It is surrounded by limitations both as to amounts which may be claimed under varying conditions, as to the right to make claim at all and as to the time within which and the form in which the claim

must be made, if at all." (*Matter of Herter,* 193 Misc. 602, 607, affd. 278 App. Div. 979, affd. 300 N. Y. 532.) A comparison of the provisions of section 18 of the Decedent Estate Law with the provisions of sections 83 and 87 of the Decedent Estate Law will demonstrate the advantages inuring to a surviving spouse who takes by intestacy.

In the event that the propounded will herein is denied probate and it is found that the decedent died intestate, the widow will have the first right to letters of administration under section 118 of the Surrogate's Court Act. " ' The right to administer the estate is a sufficient interest in this state to entitle the person in whom it is vested to contest the probate of a will.' " (*Matter of Davis, supra,* p. 473; cf. *Matter of Browning,* 274 N. Y. 508.)

It is, therefore, determined that the widow herein may file objections. (Cf. *Matter of Smidt,* 162 Misc. 596, 600.)

The proponent's second and third grounds urged for the denial of the motion are that there is no necessity for any further examination, by the widow, of the proponent and the three witnesses for the purpose of framing any objections which might subsequently be filed by her, and that since the persons sought to be examined are not subscribing witnesses they cannot be examined under section 141 of the Surrogate's Court Act. The court is in agreement with these views.

Section 141 of the Surrogate's Court Act reads, in part, as follows: " Any party to the proceeding, before or after filing objections to the probate of said will, may request the oral examination of the subscribing witnesses thereto and may examine any or all of the subscribing witnesses and any other witness produced by the proponent before the surrogate." In *Matter of Felenstein* (144 Misc. 345) the court in discussing this section, said at page 346, " The words ' produced by the proponent ' apply only to a witness who is not a subscribing witness. * * * The section properly limits the right of examination of such witnesses to those produced by the proponent. Thereby it prevents unnecessary harassment of the proponent or delay by the contestant."

The proponent in this proceeding has not produced " any other witness," nor is she willing to do so; and the examination of the proponent and the three witnesses, who are all nonsubscribing witnesses, cannot be directed under this section (*Matter of Briggs,* 180 App. Div. 843, 845; *Matter of Hirsch,* 133 Misc. 599, 600).

The examination sought by the widow under section 288 of the Civil Practice Act, in advance of the service of her answer is premature, and is not necessary to enable her to file objections. Until service of such answer and objections, and issue joined, the widow cannot be said to be a contestant (cf. *Union Trust Co. of Rochester* v. *Conway,* 238 App. Div. 764; *Mackay, Lovell & Co.,* v. *Dillon,* 215 App. Div. 842, and *Kardonsky* v. *Tozzi,* 217 App. Div. 753).

The widow's motion is presently denied, unless her answer and objections be filed within seven days after due service upon the proponent's attorney of the order to be entered hereon with notice of entry. If the objections be filed within such time, the court will consider the widow's motion as a motion for an examination before trial pursuant to section 288 of the Civil Practice Act; and that part of her motion as granted to the son is continued for such purpose (*Matter of Sheeler,* 195 Misc. 187, 188; cf. *Matter of Juengst,* 192 App. Div. 917; Surrogate's Ct. Act, § 147).

As to the son's motion for an examination of the proponent and the three witnesses before trial pursuant to section 288 of the Civil Practice Act, the proponent contends that the son failed to submit an affidavit alleging that the examination is necessary to enable him to prepare for trial and that the moving papers are, therefore, defective. The motion herein is based upon the affidavits of the widow and her attorney, as well as the minutes of the testimony of the sole surviving subscribing witness. " Should the motion be denied on this technical objection, justice would require the granting of leave to renew the application. That procedure would impose upon the attorneys and the court unnecessary labor and waste of time where obviously the irregularity or informality complained of does not prejudice the rights " of the proponent and where the moving papers disclose the necessity of the examination of the proponent and one of the witnesses. It seems " that as a practical matter, the attorney for the moving part[ies], to whom the facts of the [matter] were given, is better able than his client[s] to determine under the statute and the rules that the testimony of the [persons sought to be examined] is material and necessary " in the protection of their interests (*Broome* v. *Perlman,* 178 Misc. 873, 874; cf. *Wertheim* v. *Grombecker,* 229 App. Div. 16, 18). Furthermore, since the service of a mere notice of examination would have been ample to secure the son's right to the examination before trial of the proponent, as an adverse party, upon the

issues of undue influence and fraud, the addition of the affidavits of the widow and the attorney cannot be deemed to have nullified it (*Matter of Baker,* 160 Misc. 862, 864; *Matter of Frank,* 165 Misc. 411, 414, mod. and affd. 253 App. Div. 706).

It is not necessary for a contestant to enumerate in detail all of the matters sought to be inquired into (*Matter of Frank, supra*). The mental capacity of a decedent is a proper subject of the examination before trial and the physical condition of the decedent is relevant on the issue of undue influence (*Matter of Korn,* 265 App. Div. 987; *Matter of Tanner,* 185 Misc. 994; *Matter of Dalton,* 185 Misc. 785, 790).

"The purpose of examinations before trial, like the trial itself, is to get out the facts. As the trial should be an open meeting on the merits, both sides should have a fair opportunity, in advance of trial, to garner evidence. Examinations before trial are thus a useful procedure in facilitating preparation and expediting the trial. Professional opinion, in the light of experience, has steadily moved in favor of broadening the permissible scope of examinations. * * * There is so much merit in a disclosure of the facts in advance of trial that it should be allowed whenever legitimately sought." (*Dorros, Inc.,* v. *Dorros Bros.,* 274 App. Div. 11, 13-14; *Parker* v. *Culler Furniture Co.,* 278 App. Div. 135.) While the decision in the *Dorros* case was written by the Appellate Division, first department, with regard to the policy and practice in commercial litigation, it has been cited with approval by the Appellate Division of this department in *Matter of Kahn* (274 App. Div. 900) which involved an accounting proceeding in the Surrogate's Court, and it has been adopted in other Surrogate's Court proceedings (*Matter of Kaplan,* 193 Misc. 129; *Matter of Levy,* 92 N. Y. S. 2d 211; *Matter of Rubel,* (N. Y. L. J., June 6, 1951, p. 2098, col. 6 [New York Co]; *Matter of Bishop,* N. Y. L. J., May 1, 1951, p. 1588, col. 5 [Kings Co.]).

Under section 288 of the Civil Practice Act witnesses may be examined before trial if their presence at the trial is unlikely, or for other "special circumstances." The present tendency, as indicated by the Appellate Division of this department, is to liberalize the interpretation of the words "special circumstances" and to permit the examination of witnesses without a showing of unavailability at the trial, if it is demonstrated that the witnesses are unwilling or hostile (*Sweet* v. *Sweet,* 266 App. Div. 1010; *Reif* v. *Gebel,* 246 App. Div. 776; *Gramatan Nat. Bank* v. *Sagamore Apts.,* 241 App. Div. 840; *Farber* v. *DeBruin,* 253 App. Div. 909; *Fahey* v. *South Nassau Communities Hosp.,* 275 App. Div. 1056).

In *Matter of Egger* (188 Misc. 542 [Monroe Co.]), the examination before trial was permitted of a witness, the husband of a beneficiary, allegedly responsible for causing undue influence to be exercised on the testator, even though the charges of direct undue influence against the witness were weak and the witness had made an affidavit stating that he would not be hostile. The court said at page 544: "it is proper to examine before trial a witness likely to be hostile where it is shown that the witness was in a position to know relevant facts."

It appears that Edith M. Flynn, one of the persons sought to be examined, "was in a position to know relevant facts." According to the moving papers and the testimony of the sole surviving subscribing witness, Mrs. Flynn had been employed by the draftsman of the will for more than twenty years; the draftsman had been the attorney for the proponent as the legal representative of the estate of the mother of the proponent and the decedent herein; the draftsman, who is now dead, was the other subscribing witness to the propounded instrument and, during the latter part of his life, he was hard of hearing and used a hearing aid; Mrs. Flynn frequently attended conferences conducted by the draftsman in his office and was in the room with the decedent and the draftsman before the will allegedly was executed. Mrs. Flynn was designated as alternate executrix under the propounded instrument and she is now in the employ of the proponent's present attorney. Perhaps it cannot be strictly said that Mrs. Flynn would be a hostile witness, "but it cannot be fairly said that [s]he would be a willing and friendly witness" (*Angell* v. *Booth,* 169 Misc. 735, 736) and her connection with, and relation to, the facts and circumstances which the son must establish in order to sustain his burden of proving undue influence and fraud are such as to constitute special circumstances within the provisions of the statute (*Kraushaar* v. *Gross,* 270 App. Div. 953; *Fahey* v. *South Nassau Communities Hosp., supra*).

The application of the contestant son for the examination before trial of the proponent as an adverse party and Edith M. Flynn as a witness is granted to the extent as hereinafter indicated (*Matter of Tanner,* 185 Misc. 994, *supra; Matter of Frank, supra; Matter of Kreutzburg,* 185 Misc. 995; *Matter of Egger. supra*).

The motion for the examination of Harriet Myers (also known as Harriet Wolf) and Jane M. Sullivan, the attorney for the proponent, is denied. The moving papers and the testimony

of Miss Rixon, the sole surviving subscribing witness, are devoid of any information connecting Jane M. Sullivan and Harriet Myers with any transactions concerning the preparation or execution of the propounded will. According to Miss Rixon's testimony neither of these persons was present in the room when the will was executed, and Harriet Myers is not in the employ of the attorney for the proponent. No special or extraordinary circumstances have been shown requiring their examination (*Matter of Ash,* 166 Misc. 901, affd. 254 App. Div. 660; *Krammer* v. *Van De Water,* 244 App. Div. 809).

The proponent contends that the matters specified in the notice of motion are entirely too broad. In lieu thereof the items of the examination of Edith M. Flynn and the proponent are to be as follows: (1) As to all relevant facts and circumstances attending the preparation and alleged execution of the propounded instrument, and as to the preparation, execution and existence of any prior wills of the decedent and their contents; (2) As to the mental capacity and physical condition of the decedent prior, at and subsequent to the time of the alleged execution of the propounded instrument; and (3) As to all facts and circumstances relating to the issues of fraud and undue influence and all transactions and conversations had between Edith M. Flynn and, or the proponent, and the decedent for a period of three years prior to the alleged execution of the instrument dated September 30, 1948, and between that date and March 7, 1951, the date of the decedent's death.

The witness, Edith M. Flynn, may raise the question of privilege upon the examination if it appears that she is " being asked to disclose confidential communications " (*Berkliff Undergarment Corp.* v. *Weissmann,* 277 App. Div. 964; *Matter of LaVigne,* N. Y. L. J., April 10, 1951, p. 1294, col. 3 [New York Co.]).

Submit order on notice, accordingly, and providing for the examination of Edith M. Flynn and the proponent at this court on July 16, 1951, at 10:30 A.M., or at such other time as may be fixed by agreement of the attorneys herein.