Maurice D. Isenbergh, S.
In this contested probate proceeding the contestants seek to examine before trial the proponent executrix and residuary legatee, and four other legatees as adverse parties. Combined with that motion is another motion for a discovery and inspection of the books, records and documents in the possession or control of St. Mary’s Hospital and the Leonard Hospital during the period from August 1,1951 to the date of death of the decedent on February 9, 1956. They further move for an order staying the proponent’s demand for a bill of particulars until 10 days after the completion and transcription of the examinations before trial if such shall be directed by the court. The proponent in her brief states that she does not object to the examinations before trial but maintains that the contestants have failed to show any special circumstances to warrant an extension of the period of time before and after the execution of the will usually allowed in these cases. The affidavit accompanying the contestants’ notice of motion is made by their attorney upon the grounds that his clients do not reside within the county in which his office is situated. All the allegations are upon information and belief, the basis being interviews with either disinterested witnesses or witnesses adverse to the contestants. There is nothing contained therein which suggests that the facts and circumstances surrounding the execution of this will are so unusual, or so different from the average contested will case based upon fraud and undue influence that the court in its discretion should go beyond the usual time limits permitted for such examination. The contestants’ brief calls my attention to several cases where the court extended the usual period of time alloted to such examination. I have made an exhaustive examination of the authorities cited and other cases and am unable, except in two cases, to find an extension of the two-year subsequent period.
The two cases are Matter of Carll (201 Misc. 829) and Matter of Cosgro (decided in Albany County Surrogate’s Court, Nov. 3, 1954). In the Carll case the examination was permitted for a period commencing three years prior to the execution of the will to the date of death. The date of death was approximately two years and seven months after the date of execution of the will. No particular reason is assigned for the extra seven months. It may be assumed that the date of death was so close to the date of the two-year subsequent period that it would have been an injustice not to include the seven months. In the present case the date of death was approximately four years and five months after the execution of the will. In the Cosgro case the original decision of the Surrogate limited the *505 examination to three years prior to the execution of the will to a period two years thereafter. It was on a reargument to extend the time subsequent, which was unopposed, that the time was extended to the date of death, a period of three years and ten months after the execution of the will. The decision of the court states that it was granted because of special circumstances but it does not state what the special circumstances were. It also states therein that the motion for reargument was unopposed by the proponent from which statement it must be inferred that the proponent in that particular case was also of the opinion that there were special circumstances that warranted an extension of the time subsequent. In the present case the proponent and the other legatees vigorously oppose an extension of the time subsequent beyond the two-year period and have presented an affidavit and memorandum in opposition thereto. For these reasons the Cosgro case, therefore, cannot be regarded as a precedent to follow in the case at bar.
The other cases cited by the contestants all bear upon an extension of the period prior to the execution of the will. Matter of Brady (273 App. Div. 968) which has been specifically called to the attention of the court provided for a period from 1931 to the date of decedent’s death. An examination of the record shows the date of execution of the will to be September 18,1947 and the date of death October 4, 1947.
The motion of the contestants before the court asks only for an examination before the execution of the will of a period of about one month and eight days. It is, therefore, unnecessary to dwell further on the period before the date of execution of the will. . The items upon which the contestants desire to examine the proponent and other legatees are set forth at great length. The proponent contends that the scope is too broad. The court in lieu thereof directs that the proponent executrix and residuary legatee and the four other legatees be required to submit to examination before trial in respect to the following: (a) testamentary capacity; (b) execution of the propounded paper; (c) fraud and undue influence practiced upon the testatrix; (d) the physical condition of the testatrix as bearing upon undue influence; (e) the business relations of the deceased with proponent; (f) financial transactions of the deceased with the proponent. (Matter of Goren, 203 Misc. 609; Matter of Kreutzburg, 185 Misc. 995; Matter of Carll, 201 Misc. 829, supra; Matter of McConnell, 107 N. Y. S. 2d 258.)
They will also be required to produce upon the examination all relevant books, papers, records, documents and other data for use thereon in accordance with section 296 of the Civil *506 Practice Act. The examination will cover the period extending from three years prior to execution of the will to a period two years thereafter. (Matter of Frank, 165 Misc. 411; Matter of Egger, 188 Misc. 542; Matter of Boyle, 205 Misc. 497.)
The examinations will take place before me on a date to be agreed upon by the parties. In the event that the parties cannot agree upon the date the court will fix the date for such examinations.
The motion for a stay of proponent’s demand for a bill of particulars is granted and the contestants will have 10 days from the transcription of the examination within which to comply therewith. (Matter of Markotvits, 152 Misc. 1; Matter of Carpenter, 252 App. Div. 885; Matter of Nabson, N. Y. L. J., Sept. 25,1953, p. 552, col. 3; Matter of Le Bret, N. Y. L. J., Nov. 9, 1953, p. 1036, col. 5; Matter of Cummings, N. Y. L. J., June 1, 1954, p. 9, col. 5; Matter of Planiol, N. Y. L. J., April 3, 1956, p. 13, col. 2.) The stay, however, is granted upon the express condition that the contestants order the stenographer to furnish them with a copy of the minutes.
The contestants have moved for an order permitting discovery and inspection of the records of St. Mary’s Hospital and the Leonard Hospital from August 1, 1951 to February 9, 1956. The proponent has strenuously opposed such motion. The contestants in their brief quoted the testimony of Dr. John P. Jaffarian, one of the subscribing witnesses to the will, who has been examined under section 141 of the Surrogate’s Court Act.
Contrary to the contention of the contestants, the testimony in the transcript reveals that the cerebral vessels of the decedent, in the opinion of the doctor, were not affected until the last five or six months of her life (p. 115, lines 20-23; p. 116, lines 12 and 13), which would be about four years after the execution of the will. I am aware of the decisions permitting the discovery and inspection of hospital records and the tendency of the courts to liberalize examinations. In most of the cases cited by the contestants where discovery and inspection was permitted special circumstances, however, were brought to the attention of the court which prompted the granting of such order. In the Matter of Graban (193 Misc. 859), the testatrix, a mental patient, died in a State hospital about eight months after the execution of the will. The application was made under sections 20 and 34 of the Mental Hygiene Law which provide for the keeping of records and for access to the same upon the order of a judge of a court of record. The questions arising in that case had to do with whether the person *507 making the applications was a proper party to make the same and whether the record was a privileged communication. Matter of Failla (197 Misc. 673) dealt with the appointment of guardians of the persons and estates of infants. The welfare of the infants, a matter of paramount importance and a sacred obligation of the court, was the controlling factor in the court’s decision. Because of the presence of mental illness in the family on the maternal side of the infant, which might make the maternal relatives of the infant unfit to have the custody of the infant, the court thought it was necessary to have a discovery and inspection of hospital records in order to arrive at a just and proper decision. Again, the application was made under the Mental Hygiene Law. Neither of these cases is in point. In the Matter of Ericson (200 Misc. 1005), the court in its opinion called the will a ‘‘ deathbed will ’’. I have read other cases where the court in its discretion believed the proximity of the death of the deceased to the date of the execution of the will or special circumstances, such as continued mental sickness, or confinement in a mental institution, caused the court in pursuance of justice to permit an examination of the hospital records. Such is not the case here. This motion must stand or fall upon the general rules in respect to examination of hospital records. It has been held that an order for discovery and inspection of records may only be granted in respect to a party to the proceeding. (Matter of Cenci, 185 Misc. 479; Matter of Coen, 128 N. Y. S. 2d 166.)
In some cases the order for general inspection and discovery has been denied without prejudice, but has been restricted to records made within the two-year subsequent period. (Matter of McConnell, 107 N. Y. S. 2d 258, supra; Matter of La Vigne, 107 N. Y. S. 2d 260.)
There has been no' evidence of any nature submitted to the court at this point which would result in a determination that any facts revealed in the hospital records would be relevant at the trial. No case has been submitted where an order for discovery and inspection of hospital records of a patient confined thereto four years after the execution of the will was granted. There is no demonstration of special circumstances in this ease which would prompt the court to relax the general rule heretofore followed by our courts in similar cases.
The application for an order to discover and inspect the records of St. Mary’s Hospital and the Leonard Hospital is, therefore, denied.
Submit order or orders on notice accordingly.